James **HODGSON**, Secretary of Labor, U. S. Department of Labor, Appellee,

v.

**CENTRALIZED SERVICES, INC.,** a corporation, and C. A. Cloninger, Appellants.

No. 71–1641.

United States Court of Appeals, Fourth Circuit.

Argued Dec. 7, 1971.

Decided March 15, 1972.

Rehearing En Banc Denied May 16, 1972.

James C. Gray, Gastonia, N. C. (Frank Patton Cooke, Gastonia, N. C., on brief), for appellants.

Sylvia S. Ellison, Atty., U. S. Dept. of Labor (Alfred G. Albert, Acting Sol. of Labor, Bessie Margolin, Associate Sol., Beverley R. Worrell, Regional Sol., Carin Ann Clauss and Judith Bleich Kahn, Attys., Dept. of Labor, on brief), for appellee.

Before BRYAN, RUSSELL and FIELD, Circuit Judges.

FIELD, Circuit Judge:

This action was instituted by the Secretary of Labor under Section 17 of the Fair Labor Standards Act[1] to restrain the defendants from violating the Act's minimum wage, overtime and record keeping requirements, and from withholding unpaid wages allegedly due certain employees engaged in the preparation of Federal and State income tax returns. The operative period alleged by the Secretary was from December 12, 1967, to the date of the filing of the complaint in December of 1969. The defendants denied that the employees were engaged in commerce, or in the production of goods for commerce, and took the position that, in any event, they were entitled to the exemption provided by Section 13(a) (2) of the Act[2] for "retail or service establishments." The individual defendant, C. A. Cloninger, also contended that he was not an "employer" within the meaning of the Act. Based upon the evidence, the pleadings and pretrial admissions, the District Court filed a memorandum decision which in effect held against the defendants on each of these contentions and an order was entered in favor of the Secretary, D.C., 325 F.Supp. 138. This appeal followed.

While we entertain serious doubts that the defendants' employees were "engaged in commerce" within the meaning of the Act, we find it unnecessary to reach that issue since we conclude that the contention of the defendants that they fall within the "retail or service establishment" exemption is valid and dispositive of this case.

The facts are substantially undisputed and were found by the District Judge to be as follows: Centralized Services, Inc. is a North Carolina corporation with its one office and place of business located at Gastonia, North Carolina. It employs three or four clerical employees throughout the year, but during the tax season of some three months from January until the middle of April as many as twenty or more temporary employees are employed. The work of these employees incident to the preparation of tax returns consists of interviewing patrons, obtaining basic data such as income, dependents and deductions, and preparing Federal and State tax returns. Most of the customers are married couples where both the husband and wife are gainfully employed. Under the procedure of the defendants, the employees make up the information and supply it to the defendant, Cloninger, who ordinarily makes the final computation and completes the returns. The returns are then prepared in smooth form, duplicated and delivered to the customers who usually take them with them and mail them to the appropriate tax authorities.

The North Carolina returns are mailed to the Revenue Department of the State in Raleigh and the federal returns are mailed to the Internal Revenue Service. Until 1969, the federal returns were mailed to the Collector of Internal Revenue at Greensboro, North Carolina; however, commencing with the year 1969, residents of North Carolina were required to mail their federal returns to

1. 29 U.S.C. 201 et seq.

2. 29 U.S.C. 213(a) (2).

a record center located in Chamblee, Georgia. The defendants supply pread-dressed envelopes for these mailings and on occasion returns are mailed for a customer as a matter of courtesy. The general practice, however, is that the customers mail their own returns.

During the years in question the income tax customers of the defendant numbered about 6,000 per year. The total gross volume of the business of Centralized never exceeded $70,000.00 a year, and virtually all of the business was from sources in the vicinity of Gastonia and within the State of North Carolina. The service was open to the general public and was characterized by the District Judge as "walk in" business. On very few occasions tax returns were mailed to patrons outside North Carolina addressed primarily to individuals who were temporarily in the military forces.

The exemptive provisions of Section 13(a) (2) of the Act [3] set up three tests which must be met by an employer seeking to qualify thereunder: (1) fifty per cent of its annual dollar volume of sales of goods or services must be made within the state; (2) seventy-five per cent of its total sales volume must not be for resale; and (3) seventy-five per cent of its total sales volume must be recognized as retail sales or services in the particular industry. The District Judge, in effect, found that Centralized met the first two of these tests, but stated that he was "quite doubtful" that the preparation of tax returns has the retail concept contemplated by Section 13(a) (2) of the Act. Additionally, he observed that the defendants had failed to show that the preparation of tax returns was "recognized as retail sales or services in the particular industry."

Upon this appeal the Secretary takes the same position which was successfully urged upon the District Court to the effect that the business of the defendants lacks the "retail concept" necessary for qualification under Section 13(a) (2). The Secretary does not contend that in the context of retail vis-a-vis wholesale, the defendants would fall within the latter category but he suggests that in failing to present evidence on the issue of the "retail concept" as well as the "industry recognition" test, the defendants have failed to carry the burden of this affirmative defense. See Arnold v. Ben Kanowsky, Inc., 361 U.S. 388, 80 S.Ct. 453, 4 L.Ed.2d 393 (1960); Mitchell v. Kentucky Finance Co., 359 U.S. 290, 79 S.Ct. 756, 3 L.Ed.2d 815 (1959).

The question of what constitutes evidence that is competent or persuasive on these issues is somewhat obscure. In Wirtz v. Modern Trashmoval, Inc., 323 F.2d 451 (4 Cir. 1963), the Secretary challenged the opinion evidence of industry representatives as incompetent and self-serving, and in Schultz v. Nalle Clinic, 444 F.2d 17 (4 Cir. 1971), this Court in effect discarded testimony of this nature with the observation that since there was no contest on the facts such testimony was purely the expression of an opinion.

In his exhaustive and well reasoned opinion in Wirtz v. Modern Trashmoval, Inc., *supra*, Judge Boreman suggested that the determination of whether a business activity is a "retail or service establishment" within the meaning of Section 13(a) (2) should be made upon an examination of the record as to the

---

3. 29 U.S.C.A. § 213(a) (2), as revised by amendment in 1966 provides in part as follows:

"§ 213. Exemptions

"(a) The provisions of sections 206 and 207 of this title shall not apply with respect to—

(2) any employee employed by any retail or service establishment * * * if more than 50 per centum of such establishment's annual dollar volume of sales of goods or services is made within the State in which the establishment is located * * *. A 'retail or service establishment' shall mean an establishment 75 per centum of whose annual dollar volume of sales of goods or services (or of both) is not for resale and is recognized as retail sales or services in the particular industry * * *."

nature and conduct of the business in the light of general criteria developed under the Act. He then adverted to the guidelines with respect to the general characteristics of retail and service establishments as published by the Administrator. 29 C.F.R. 779.318:

"Typically a retail or service establishment is one which sells goods or services to the general public. It serves the everyday needs of the community in which it is located. The retail or service establishment performs a function in the business organization of the nation which is at the very end of the stream of distribution, disposing in small quantities of the products and skills of such organization and does not take part in the manufacturing process. * * * Such an establishment sells to the general public its food and drink. * * * It provides the general public its repair services and other services for the comfort and convenience of such public in the course of its daily living."

Applying these criteria to the undisputed facts in that case, Judge Boreman made the following conclusory observations:

"Taking a very practical view, which is said to be the proper criterion in these cases, would seem to point to the conclusion that Modern's activity fits the concept of retail contemplated by section 13(a) (2) of the Act."

In our opinion the application of these criteria requires a similar conclusion in the present case. The transactions of Centralized are numerous and relatively small. Its services are offered to the general public in a limited geographical area, and are provided "for the comfort and convenience of such public in the course of its daily life." The fact that Centralized did not produce "evidence" on this issue does not carry the day for the Secretary since, with no dispute on the facts, the question of whether Centralized was a "retail or service establishment" was a question of law which properly should be weighed and determined "by the ordinary and commonplace connotation accorded in layman's parlance to 'retail'." Schultz v. Nalle Clinic, *supra*, 444 F.2d at page 20.

The Secretary points out that a pre-1949 interpretation by the Administrator listed "legal firms, accounting firms, [and] engineering firms" as lacking the retail concept, and contends that this is controlling in the present case in view of Section 16(c) of the 1949 Amendments to the Act[4] which provides that such prior rulings and interpretations should remain effective unless inconsistent with the statute as amended. See Mitchell v. Kentucky Finance Co., *supra*. We do not believe that the broad categorization of "accounting firms" which first appeared in the Administrator's rulings in 1942 should arbitrarily embrace the unsophisticated business activities of the defendants in an area of service which came into being and has developed throughout the country only during the past decade. In our opinion it is much more realistic and consonant with the law to apply the basic criteria of the Administrator to the defendants' business, and since we have concluded that it satisfies these criteria, it was error for the District Court to deny the defendants the benefit of the exemption.

Reversed.

4. 63 Stat. 920.